IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JENNIFER COUTURE, individually and as
mother and next friend of M.C., a minor child,

       Plaintiff,

vs.                                                                     Civ. No. 05-972 JCH/DJS

BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS,
ELIZABETH EVERITT, in her individual and
official capacity, DEBI HINES, in her
individual and official capacity, PAT WILLIS,
in her individual and official capacity, JOE
FLIPPO, in his individual and official capacity,
and JACQUELINE BRADY, in her individual
and official capacity,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Motion for Summary Judgment to Bar Injunctive Relief and Memorandum Brief, filed May 3, 2006 **[Doc. No. 33]**. The Court, having considered the motion, memoranda, and relevant law and being otherwise fully informed, finds that the motion is well taken and will be **GRANTED.**

### BACKGROUND[1]

Since December 20, 2004, Plaintiff has not resided in the Albuquerque Public School District and Plaintiff's son, on behalf of whom Plaintiff brings this litigation (hereinafter referred to as "MC"), has not attended an Albuquerque Public School. Plaintiff and her son moved to

---

[1] The following facts are either undisputed or construed in Plaintiff's favor.

another state, and Matthew currently attends school in that state.[2] Plaintiff is pleased with the education her son is now receiving. Plaintiff has recently married a resident of the state in which she lives, and Plaintiff's husband has lived in that state for approximately eight years.

Although Plaintiff moved to another state for various reasons, the main reason she moved was because Plaintiff did not wish to keep Matthew in school in Albuquerque. Plaintiff testified that there is a "possibility" that she and MC "may" return to Albuquerque. Plaintiff's family lives in Albuquerque and her husband's family lives in Albuquerque. Plaintiff testified that if she returned to Albuquerque she "[didn't] know that [she] would put Matthew back in APS after everything that [she and Matthew have] been through."

## STANDARD

Summary judgment generally is appropriate when a court determines that "'there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law.'" *Thrasher v. B & B Chem. Co.*, 2 F.3d 995, 996 (10th Cir. 1993) (citation omitted). Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

To carry its initial burden, the moving party need not negate the nonmoving party's claim. *See Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997). "'Instead, the movant only bears the

---

[2] During the hearing on this motion, counsel refrained from identifying the state to which Plaintiff and MC moved because Plaintiff's ex-boyfriend is currently restrained from contacting Plaintiff pursuant to an active Order of Protection.

initial burden of 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). A plaintiff cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment but rather must produce some specific factual support of its claim. *See Pueblo v. Neighborhood Health Centers, Inc.*, 847 F.2d 642, 649 (10th Cir. 1988). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Upon a motion for summary judgment, a court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998). If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law. *See, e.g.*, *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996); *Celotex*, 477 U.S. at 322.

## DISCUSSION

Defendants argue that they are entitled to summary judgment in their favor on Plaintiff's claim for injunctive relief seeking to prohibit APS or any of its employees from using physical

restraint, aversives, and isolation against any student.[3] Defendants argue that Plaintiff's prayer for injunctive relief is moot. Under Article III of the Constitution, this Court may only adjudicate actual, ongoing controversies. *Honig v. Doe*, 484 U.S. 305, 317-18 (1988) (citing *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 546 (1976); *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)); *see also Green v. Branson*, 108 F.3d 1296, 1299 (10th Cir. 1997) (requests for injunctive relief are subject to a mootness inquiry to determine whether an actual case or controversy exists between the parties). The core of the mootness inquiry is "whether the controversy continues to 'touch[] the legal relations of parties having adverse legal interest' in the outcome of the case." *Id.* (quoting *DeFunis v. Odegaard*, 416 U.S. 312, 317 (1974)); *id.* at 1299-1300 ("It is well established that what makes a declaratory judgment action 'a proper judicial resolution of a case or controversy rather than an advisory opinion--is the settling of some dispute which affects the behavior of the defendant toward the plaintiff.'") (citations omitted).

Defendants argue, and the Court agrees, that the legal relationship between MC and APS does not include the present use of physical restraint, aversives, and isolation. Plaintiff and her son have moved to another state, and MC attends school in that state. Although Plaintiff has testified that there is a "possibility" that she and MC "may" return to Albuquerque, a future possibility that a claim may not be moot does not render an otherwise presently moot request for injunctive relief actionable. *Cf. Honig*, 484 U.S. at 317-18 ("That the dispute between the parties was very much alive when suit was filed, or at the time the Court of Appeals rendered its judgment, cannot substitute for the actual case or controversy that an exercise of this Court's

---

[3] Defendants do not move for summary judgment on, and this Memorandum Opinion and Order does not address, Plaintiff's claim for injunctive relief to the extent Plaintiff seeks compensatory education on behalf of MC.

jurisdiction requires" at the time of the Court's review) (citing *Steffel v. Thompson*, 415 U.S. 452, 459, n. 10 (1974) ("The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."); *Roe v. Wade*, 410 U.S. 113, 125 (1973) (same)).[4]  Because MC no longer lives or attends school in Albuquerque, Plaintiff's claim for injunctive relief is moot.  *Cf. Green*, 108 F.3d at 1300 (a prisoner's claim for injunctive relief is moot when the prisoner is no longer in the control of the correctional institution); *Bauchman v. W. High Sch.*, 132 F.3d 542 (10th Cir. 1997) (because the plaintiff student had graduated "defendants no longer [had] the power or opportunity to adversely affect [the plaintiff's] constitutional rights," and "entry of a declaratory judgment in [the plaintiff's] favor therefore would have [had] no effect on the defendants' behavior toward her as a student").

Plaintiff's arguments to the contrary do not persuade the Court otherwise.  Plaintiff maintains, for example, that her case falls within the narrow capable-of-repetition exception to the mootness doctrine.  This exception applies only "'where the following two circumstances [are] simultaneously present: (1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'"  *Thompson*, 187 F.3d at 1216 (quoting *Spencer v. Kemna*, 523 U.S. 1 (1998)); *see also Green*, 108 F.3d at 1300 ("this court has explained that a 'plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured [by the defendant] in the future.'")

---

[4] *See also McAlpine v. Thompson*, 187 F.3d 1213 (10th Cir. 1999) ("when an inmate's claim for prospective injunctive relief regarding conditions of confinement becomes moot due to the inmate-plaintiff's release from confinement, the inmate's parole or supervised release status does not, absent some exceptional showing, bring that claim under the narrow 'capable of repetition, yet evading review' exception to the mootness doctrine").

(quoting *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir.1991)).  In support of this argument, Plaintiff cites *Honig v. Doe*, in which the Supreme Court discussed mootness in the context of the IDEA's predecessor law, the Education of the Handicapped Act.  484 U.S. 320 (1988).  In *Honig*, the plaintiffs sought equitable relief in the form of an order requiring the State of California to provide educational services when the local educational agency refused.  *Id.* at 308, 316.  The Court found the claims in *Honig* justiciable as to one of the plaintiffs who had not yet "aged out" of the right to receive special education even though he was not currently enrolled in the district of the educational system under attack.  *Id.* at 318.  The Court reasoned that the plaintiff's claim was "capable of repetition" because the plaintiff was still a resident of California and as such there was a "reasonable expectation" that he would enroll in school.  *Id.* at 319-20 & n.6.  Justice Brennan's majority opinion specifically rejected the dissent's focus on certainty of recurrence:

> Although Justice Scalia equates "reasonable expectation" with "demonstrated probability," the very case he cites for this proposition described these standards in the disjunctive, *see Murphy v. Hunt*, 455 U.S., at 482 ("[T]here must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur"), and in numerous cases decided both before and since *Hunt* we have found controversies capable of repetition based on expectations that, while reasonable, were hardly demonstrably probable. . . .  Regardless, then, of whether respondent has established with mathematical precision the likelihood that he will enroll in public school during the next two years [before he would "age out" of special education], we think there is at the very least a reasonable expectation that he will exercise his rights under the EHA.

*Id.* at 319 n.6.

The facts of *Honig* are distinguishable from the facts here.  In *Honig*, the student was a

resident of California, the state in which the educational system was under attack was located. Here, MC is a resident of another state. Moreover, in *Honig*, the Court emphasized the student's continuous efforts to "vindicate his right[s]" within the school district. *Id.* at 319-20 n.6. Here, in contrast, Plaintiff and MC have not chosen to seek relief with in the district or state and instead have moved out of state. Although Plaintiff testified that there is a "possibility" that she "may" return to Albuquerque, a "possibility" of returning is not the same as a "reasonable expectation" of returning. Indeed, Plaintiff has not set forth any evidence demonstrating that she has present plans to return to Albuquerque or that she is even considering such a return.[5] The Court is unwilling to conclude that a vague and unspecific assertion that there is a "possibility" of return, without more, is sufficient to give rise to a "reasonable expectation" of return.

Moreover, even if Plaintiff and MC did return to Albuquerque, returning to Albuquerque would not give rise to a "reasonable expectation" that APS would subject MC to the same type of seclusion again or that MC would have to exercise his rights under the IDEA again. *Cf. Los Angeles v. Lyons.* 461 U.S. 95, 105-06 (1983) (finding no possibility of future injury even though the plaintiff would be within the jurisdiction of the Los Angeles Police Department because he resided in the city). To the contrary, Plaintiff has testified that she "doesn't know that [she] would put Matthew back in APS after everything that [she and Matthew have] been through."

Furthermore, even if Plaintiff did re-enroll MC at APS, it is unlikely that MC would suffer the same injury because Plaintiff presumably would not authorize APS to use timeouts as part of

---

[5] Plaintiff maintains that she has ties to Albuquerque because her parents live here. Plaintiff, however, has married a resident of another state who has lived in that state for approximately eight years (although his family also lives in Albuquerque), and Plaintiff has indicated that she is pleased with the education her son currently is receiving.

MC's Individualized Education Plan (IEP).[6]  And, Plaintiff has not set forth evidence indicating that APS would utilize timeout if it was not part of MC's IEP.  The Court therefore concludes that even if Plaintiff re-enrolled MC in the Albuquerque Public Schools, there would be no reasonable expectation that APS would repeat its actions.  *Cf. Honig*, 484 U.S. at 320 ("Our cases reveal that, for purposes of assessing the likelihood that state authorities will reinflict a given injury, we generally have been unwilling to assume that the party seeking relief will repeat the type of misconduct that would once again place him or her at risk of that injury.").

Although in *Honig*, the Court dismissed the analogous argument that the same circumstances would not recur were the plaintiff-student to re-enroll, the Court emphasized the probability that "[the plaintiff] would again be subjected to the same unilateral school action[, excluding children from the classroom by indefinitely expelling them,] for which he initially sought relief."  *Id.* at 321; *id.* at 308, 312.  Given this probability of unilateral action, the Court concluded that the student's claim was justiciable.  *Id.* at 319-20 ("Given [the plaintiff's] continued eligibility for educational services under the EHA, the nature of his disability, and [the state's] insistence that all local school districts retain residual authority to exclude disabled children for dangerous conduct, we have little difficulty concluding that there is a 'reasonable expectation,' . . . that [the plaintiff] would once again be subjected to a unilateral 'change in

---

[6] IEPs, which are required pursuant to the IDEA, are road maps of the specially-designed instruction a public school intends to provide a student covered by the Act.  To determine the appropriate education for each child, the IDEA requires the teacher of the child, a representative of the school, the parents of the child, and, if possible, the child him or herself, to work together in a collaborative process to formulate an IEP.  20 U.S.C. § 1414(d)(1)(B); *see also Sherwood*, 254 F.3d at 881 (acknowledging that the "statutory scheme mandat[es] parental participation in an annual decision-making process").  Plaintiff or MC's grandmother, therefore, were participants in the development of MC's IEPs.  At the time APS used timeout with respect to MC Plaintiff was not aware of the nature of the timeouts APS was using.

placement' for conduct growing out of his disabilities were it not for the statewide injunctive relief issued below.") (internal footnote omitted).[7]  Here, in contrast, the use of timeout was part of each of MC's IEPs, and Plaintiff or MC's grandmother were involved in the creation of those plans.  APS, therefore, did not undertake unilateral action against MC.  And, unlike the record in *Honig*, there is no evidence in the record here indicating that APS possibly, much less likely, would take such unilateral action against MC if Plaintiff prohibited the use of timeouts as part of MC's IEP.

The Court also is unpersuaded by Plaintiff's argument that the Court should deny Defendants' motion because IDEA cases are not suitable for decision on the basis of summary judgment.  Pl's Resp. in Opp. to Defs' Mot. for Summ. J. to Bar Injunctive Relief at 6 (citing 20 U.S.C. § 1415(i)(2) and *L.B. v. Nebo Sch. Dist.*, 379 F.3d 966, 974 (10th Cir. 2004)).  Plaintiff argues that summary judgment is particularly inappropriate in the context of relief since the Court has wide discretion under the IDEA to award "appropriate" relief, and the Court's decision to award any relief is based solely in the Court's exercise of equity which cannot properly be exercised in "a vacuum divorced from consideration of all the evidence."  *Id.* at 6-7; *see also Reid v. D.C.*, 401 F.3d 516, 523 (D.D.C. 2005) ("As to the remedial provision [of the IDEA], the

---

[7] In *Honig*, even though the plaintiff student no longer lived in the school district, the Court upheld the issuance of a state-wide injunction because the Court found that the plaintiff, as a resident of the state, would likely face the same threat in any district in the state.  The Court explained that given the state's argument that "local school districts retain unilateral authority under the EHA to suspend or otherwise remove disabled children for dangerous conduct," the Court had "every reason to believe that were it not for the injunction barring petitioner from authorizing such unilateral action, [the plaintiff] would be faced with a real and substantial threat of such action in any California school district in which he enrolled."  *Id.* at 321-22 (citing, in contrast, *Lyons*, 461 U.S. at 106, in which the plaintiff-respondent lacked standing to seek injunctive relief because he could not plausibly allege that police officers choked all persons whom they stopped, or that the city "authorized police officers to act in such manner").

Supreme Court has emphasized that IDEA relief depends on 'equitable considerations'") (citations omitted).

Although *L.B. v. Nebo School District*, cited by Plaintiff in support of her argument, did recognize that "many IDEA claims do not fit into the typical summary judgment standards of 'no genuine issue of material fact,'" "[b]ecause the IDEA requires a district court to grant a judgment on the record based on its own ascertainment of the preponderance of the evidence," 379 F.3d at 974, this principle does not apply here because the review of the administrative record has no application to the question whether the Plaintiff's claim is moot. As the Supreme Court has held, "The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Steffel v. Thompson*, 415 U.S. 452, 459, n. 10 (1974). Therefore reviewing the administrative record to determine whether Plaintiff's claim was justiciable at the time of the administrative hearing has no relevance to the question whether Plaintiff's claim is justiciable now. *Cf. id.*

Moreover, the statutory provision in the IDEA granting a court the power to award "appropriate" relief does not allow federal courts to disregard constitutional limitations that require an actual case and controversy. *Green*, 108 F.3d at 1299 ("Article III's requirement that federal courts adjudicate only cases and controversies *necessitates* that courts *decline to exercise jurisdiction* where the award of any requested relief would be moot--*i.e.* where the controversy is no longer live and ongoing.") (emphasis added) (citing *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78, 108 L. Ed. 2d 400, 110 S. Ct. 1249 (1990)). Accordingly, before the Court can even accept jurisdiction of Plaintiff's case and undertake a review of the administrative record, the Court must first determine whether Plaintiff's claim is moot. *Cf. id.*

Finally, to the extent Plaintiff's argument assumes that the Court would find facts in the administrative record indicating that Plaintiff's claim for injunctive relief is not moot, it was Plaintiff's burden to come forward with specific facts precluding summary judgment in Defendants' favor.  Plaintiff failed to do so.  For all of these reasons, the Court therefore concludes that Plaintiff's claim for injunctive relief seeking to restrain APS and any of its employees from using physical restraint, aversives, and isolation against any student is moot, and that Defendants' motion for summary judgment should be granted.[8]

## CONCLUSION

**IT THEREFORE IS ORDERED** that the Defendants' Motion for Summary Judgment to Bar Injunctive Relief and Memorandum Brief, filed May 3, 2006 **[Doc. No. 33]**, is hereby **GRANTED,** and that Plaintiff's claim for injunctive relief prohibiting APS or any of its employees from using physical restraint, aversives, and isolation against any student is dismissed in its entirety.

Dated this 26th day of March 2007.

_____
JUDITH C. HERRERA
UNITED STATES DISTRICT JUDGE

---

[8] Because the Court concludes that Plaintiff's claim for injunctive relief prohibiting APS or any of its employees from using physical restraint, aversives, and isolation against any student is moot, the Court does not reach Defendants' second argument that Plaintiff does not have standing to maintain her claim.