IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**JENNIFER COUTURE, individually and
as mother and next friend of M.C., a
minor child,**

          **Plaintiff,**

vs.                                                                                          Civ. No.  05-972 JH/DJS

**BOARD OF EDUCATION OF ALBUQUERQUE
PUBLIC SCHOOLS, et al.,**

          **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' *Motion for Summary Judgment As To Plaintiff's Equal Protection Claim* [Doc. No. 168]. In reaching its decision, the Court has reviewed the briefs submitted by counsel, as well as the law and the evidence in the record, and concludes that the motion should be granted.

## PROCEDURAL HISTORY

Plaintiff is the mother of M.C., a former student attending Albuquerque Public Schools ("APS") who received special education services. On September 9, 2009, Plaintiff filed a complaint asserting claims against APS and various individuals for violation of her son's rights under the Individuals with Disabilities Education Act ("IDEA"), Section 504 of the Rehabilitation Act, and Title II of the Americans With Disabilities Act ("ADA"), as well as claims for violation of several of his constitutional rights, negligence, and intentional torts. Many of Plaintiff's claims have been dismissed, as discussed in previous Memorandum Opinions and Orders of this Court. Defendant APS previously moved for summary judgment on Plaintiff's equal protection claim. *See* Doc. Nos.

94 and 95. The Court granted APS' motion in part, leaving portions of the equal protection claim still pending, as discussed in further detail below. *See* Doc. No. 152. At the same time, the individual Defendants moved for qualified immunity on Plaintiff's claims for unreasonable seizure and substantive and procedural due process. *See* Doc. Nos. 29 and 30. This Court granted summary judgment in favor of Defendants on Plaintiff's substantive due process claim but denied the motion for qualified immunity as to the Fourth Amendment and procedural due process claims. Doc. No. 151. On appeal of that decision, the United States Court of Appeals for the Tenth Circuit held that the individual Defendants were entitled to qualified immunity for the Fourth Amendment and procedural due process claims because Plaintiff had failed to show that M.C.'s constitutional rights were violated. *Couture v. Albuquerque Pub. Sch.*, 535 F.3d 1243 (10th Cir. 2008). Thus, the Court has dismissed the claims of unreasonable seizure and violation of Fourteenth Amendment procedural and substantive due process rights. However, the individual Defendants did not move for qualified immunity on Plaintiff's Fourteenth Amendment equal protection claim, and accordingly that claim was not before the Tenth Circuit. *Id.* at 1249 n.3. Therefore, the equal protection claim remains pending.

## DISCUSSION

Both this Court and the Tenth Circuit have discussed the facts of this case at length. Thus, the Court will not repeat those facts herein, but incorporates the facts as set forth in this Court's prior Memorandum Opinions and Orders, as well as the Tenth Circuit's opinion in *Couture v. Board of Educ. of the Albuquerque Pub. Schs.*, 535 F.3d 1243 (10th Cir. 2008). The Court concludes that all Defendants are entitled to summary judgment on the equal protection claim.

## I.   THE EQUAL PROTECTION CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

Plaintiff states that she is not pursuing an equal protection claim against the individual Defendants, but only as to APS.  *See* Doc. No. 172 at 2.  For that reason, the individual Defendants are entitled to summary judgment on the equal protection claim.

## II.   THE EQUAL PROTECTION CLAIM AGAINST APS

The equal protection claim based on municipal liability that remains pending against APS is narrow in scope.  As this Court ruled in its previous Memorandum Opinion and Order [Doc. No. 152 at 16-20], Plaintiff's remaining municipal liability claim stems from APS's failure to have an appropriate written policy on the use of timeout rooms, physical restraint, and aversives for disabled children.  As Defendants correctly pointed out, a plaintiff suing a municipality under Section 1983 must show that a municipal employee committed a constitutional violation, and that a municipal policy or custom was the cause of that constitutional violation.  *See Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1264 (10th Cir. 2008); *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004).  It is not enough simply to demonstrate that the entity has failed to adopt a suitable and necessary policy; the plaintiff must also show that such failure led to a deprivation of constitutional rights.

Defendants' motion for summary judgment should be granted because Plaintiff has failed to come forward with evidence to show an underlying violation of M.C.'s right to equal protection.  Further, even if they had shown such a violation, Plaintiff has also failed to demonstrate that such a violation was caused by APS' failure to have an appropriate written policy on the use of timeout rooms, physical restraint, and aversives.

In order to survive a motion for summary judgment on the equal protection claim, Plaintiff

has the burden to demonstrate the existence of a genuine issue of material fact as to whether APS treated M.C. differently than another who is similarly situated without a rational basis for the disparate treatment. *Crider v. Bd. of County Comm'rs of Boulder*, 246 F.3d 1285, 1288 (10th Cir. 2001). Under rational basis scrutiny, the Court will uphold APS's actions so long as it is rationally related to a legitimate government purpose or end. *See, e.g., Vacco v. Quill*, 521 U.S. 793, 799 (1997). "It is hornbook constitutional law that mere negligence or mistake resulting in uneven application of the law is not an equal protection violation." *Roe v. Keady*, 329 F.3d 1188, 1191-92 (10th Cir. 2003).

      **A.**     **Different Treatment of Similarly Situated Individuals**

In its ruling on Plaintiff's motion for summary judgment on her equal protection claim, this Court held that Plaintiff was not entitled to summary judgment because she had failed to come forward with "evidence regarding the behavior of other six-year-old students or APS's treatment of those students. Accordingly, Plaintiff has not made a threshold showing that M.C. is similarly situated to other first grade students." Doc. No. 152 at 14-15. APS argues that this ruling is the law of the case, and therefore it is entitled to summary judgment because Plaintiff cannot satisfy this element of her claim as a matter of law. The Court disagrees with this analysis. A plaintiff may move for summary judgment on a claim and, if she fails to come forward at that time with evidence to adequately support her motion, the motion will be denied. The claim survives, however, and in the event the defendant moves for summary judgment on the claim, the plaintiff retains the right to come forward with evidence demonstrating the existence of a genuine dispute of material fact. APS argues, in essence, that a plaintiff who attempts to prevail by summary judgment motion and fails necessarily loses the right to oppose a defendant's motion for summary judgment and therefore loses the claim altogether. APS cites no law in support of this proposition, and the Court is aware of none.

4

The fact that Plaintiff failed to support her motion for summary judgment with evidence of different treatment of similarly situated individuals does not preclude her from doing so in opposition to Defendants' motion.  Thus, Defendants cannot win summary judgment by relying on this Court's ruling on the Plaintiff's motion for summary judgment.

However, after reviewing the *merits* of Defendants' motion for summary judgment, the Court finds that it should be granted.  In her response to the motion, Plaintiff does attempt to demonstrate the existence of a genuine issue of material fact on the question of whether M.C. was similarly situated to other six-year-olds whom APS treated differently.  She points to APS policies requiring its staff to refrain from harassing students, abridging their rights, or using corporal punishment, and instead adopting the use of progressive discipline. Such policies make no mention of timeout rooms or physical restraint.  She also cites the opinions of her expert witnesses regarding APS's use of timeout rooms and physical restraint with M.C..  However, Plaintiff has come forward with no evidence of different treatment of similarly situated students.  Instead, she argues that M.C. was similarly situated to other first graders based on APS's policies that were applicable to all students, and to the extent that APS acted in a way that was not in accordance with those general policies, M.C.'s equal protection rights were violated. The Court disagrees with this argument. The evidence in the record demonstrates that unlike the majority of APS students, M.C. had been found to be emotionally disturbed and that on multiple occasions he used verbal threats and physical violence against his peers, teachers, and other staff.  The record also demonstrates that, unlike the majority of APS students, M.C. had an individual education program ("IEP") which provided for supervised timeouts, such as those employed by APS using the timeout room.  If Plaintiff's reasoning were upheld, then no school district could ever implement an IEP for a disabled student that was in any way at odds with the school district's general policies without inviting a lawsuit for violation of

equal protection rights. That cannot be the law, for the ADA—recognizing that disabled students have unique and varied challenges—requires schools to tailor an IEP to the specific needs and goals of the individual student rather than stuffing them into a "one size fits all" policy. *See* 20 U.S.C. § 1414(d)(1). Accordingly, the Court concludes, for the second time, that Plaintiff has failed to show that M.C. is similarly situated to other first grade students. For this reason, Defendant's motion for summary judgment should be granted.

### B.     Rational Basis for Different Treatment of M.C.

Defendants' motion for summary judgment will be granted for a second, alternate reason: Plaintiff has failed to show that APS lacked a rational basis for using timeouts and restraint of M.C. when it did not use those techniques with other students.

APS argues that the Tenth Circuit's opinion in *Couture*, 535 F.3d 1243 (10th Cir. 2008), is the law of the case on this question, and again this Court disagrees. The Tenth Circuit expressly declined to reach any of Plaintiff's claims other than those for unreasonable seizure and procedural due process. *Id.* at 1249 n.3 and 1250. Thus, the Tenth Circuit has not decided any issues with regard to the equal protection claim, and this Court must conduct an analysis to determine whether there is a genuine issue of material fact to be resolved at trial.[1]

The fact that the Tenth Circuit has not actually decided the issue presently before this Court does not mean, however, that its opinion is irrelevant. To the contrary, in adjudicating Defendants' appeal on the unreasonable seizure and procedural due process claims, the circuit court conducted

---

[1] Plaintiff argues that Defendants' motion for summary judgment should be denied as untimely, asserting that Defendants should have raised these issues before the motion deadline when the parties' other dispositive motions were filed. Ordinarily the Court would agree. However, the Tenth Circuit's opinion, though not dispositive, provides new and substantial guidance on the equal protection claim and therefore justifies a renewed analysis of that claim at this late stage of the litigation.

a thorough review of the summary judgment facts and a careful legal analysis of the reasonableness—from a constitutional perspective—of Defendants' actions under the circumstances of this case. In reaching its decision, the Tenth Circuit stated:

> Temporarily removing M.C., given the threat he often posed to the emotional, psychological, and physical safety of the students and teachers, was eminently reasonable. The educators' response was particularly reasonable given that the timeouts were expressly prescribed by M.C.'s IEP as a mechanism to teach him behavioral control. The IEP, which was developed by educational specialists in consultation with M.C.'s mother, and to which she agreed in writing, sets forth educational and behavioral methods that M.C.'s classroom teachers were required to follow. . . . While the timeouts were not as effective as the teachers hoped, their continued employment of timeouts over a two-month period was reasonable. If we do not allow teachers to rely on a plan specifically approved by the student's parents and which they are statutorily required to follow, we will put teachers in an impossible position-exposed to litigation no matter what they do.

*Id.* at 1252. The Tenth Circuit analyzed the various occasions on which Defendants placed M.C. in timeout, concluding that their actions were both justified at their inception, *id.* at 1252, and reasonably related in scope to the educational purposes they were meant to achieve. *Id.* at 1253-56.

After reviewing the voluminous evidence currently on file in this case and considering the rationale of the Tenth Circuit's opinion, the Court concludes that the Defendants' actions in placing M.C. in timeout clearly were rationally related to a legitimate government purpose. M.C. presented APS with extremely difficult and intractable behavior that was disruptive and dangerous to his peers as well as his teachers. In order to achieve the dual purposes of protecting his classmates and teaching M.C. self-control so that he could then focus on academics, Defendants and Plaintiff developed an IEP that provided for timeouts. The timeouts were not always successful, but Defendants reasonably believed that they would help to address the problems resulting from M.C.'s emotional disturbance and therefore inure to the benefit of both M.C. and his classmates. In short,

on the record before the Court it is undisputed that there was a rational basis for Defendants' actions, and therefore their motion for summary judgment should be granted.

**IT IS THEREFORE ORDERED** that *Motion for Summary Judgment As To Plaintiff's Equal Protection Claim* [Doc. No. 168] is **GRANTED**, and final partial summary judgment is entered in favor of all Defendants on Plaintiff's Fourteenth Amendment equal protection claim.

_____
**UNITED STATES DISTRICT JUDGE**