IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JENNIFER COUTURE, individually and
as mother and next friend of M.C., a
minor child,

                Plaintiff,

vs.                                                        Civ. No.  05-972 JH/DJS

BOARD OF EDUCATION OF ALBUQUERQUE
PUBLIC SCHOOLS, et al.,

                Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' *Motion for Reconsideration of the Court's Denial of Defendants' Motions for Summary Judgment As to Tort Claims* [Doc. No. 169]. Defendants ask this Court to reconsider its Memorandum Opinion and Order entered May 18, 2007 [Doc. No. 158], in which it denied Defendants' motion for summary judgment on Plaintiff's claims for negligence and intentional torts.  The Court has reviewed the motion and supporting brief, as well as Plaintiff's response and Defendants' reply. The threshold issue presented by the motion is whether the Tenth Circuit's decision concluding that Defendants did not violate M.C.'s constitutional rights to procedural due process and right be free from unreasonable seizure necessarily compels the conclusion that Defendants were not negligent in their use of the timeout room with respect to M.C.   Defendants also contend that the New Mexico Tort Claims Act has not waived their sovereign immunity for either Plaintiff's negligence or intentional tort claims.  After reviewing the law and the arguments of counsel, the Court concludes that the motion should be granted in part and denied in part.

**PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

In her Complaint, Plaintiff alleges that Defendants Albuquerque Public Schools ("APS"), Pat Willis, Joe Flippo, and Jacqueline Brady were negligent in their operation of the timeout room in which they placed Plaintiff's son, M.C. Doc. No. 1 at 17. She alleges that "appropriate adult supervision, an appropriate physical room which is not blocked or locked, and access to bathroom and water are so essential to the safe operation of a 'time out' room in a public school, that the absence of such features in defendant Brady's classroom 'time out' room is akin to [sic] safety equipment." *Id*. Therefore, she alleges that the negligent operation of the timeout room not only caused damage to M.C., but also constituted a dangerous or unsafe condition that created a potential risk to the APS students at Governor Bent Elementary School. *Id*. at 18. Plaintiff also alleged that Defendants' acts constituted intentional torts against her son. *Id*.

The Defendants previously moved for summary judgment on Plaintiff's tort claims. In a Memorandum Opinion and Order entered May 18, 2007 [Doc. No. 158], the Court denied the motion on several grounds. For example, the Court observed that certain aspects of M.C.'s detention in the timeout room were not in accord with his individual educational program ("IEP"), and therefore Defendants were not, as they contended, "simply educating M.C. pursuant to the IEP." Doc. No. 158 at 8. The Court also rejected Defendants' argument that they were immune from Plaintiff's negligence claims, concluding that this case was one in which the alleged negligence was connected to the operation or maintenance of the building that created a dangerous condition for a group of students, and was not simply an isolated administrative decision impacting one individual. *Id*. at 13 (concluding that this case was more akin to *Upton v. Clovis Mun. Sch. Dist*., 2006-NMSC-040, 140 N.M. 205, than to *Espinoza v. Town of Taos*, 120 N.M. 680, 683, 905 P.2d 718, 721 (1995)).

Both this Court and the Tenth Circuit have discussed the facts of this case at length. Thus, the Court will not repeat those facts herein, but incorporates the facts as set forth in this Court's prior Memorandum Opinions and Orders, as well as the Tenth Circuit's opinion in *Couture v. Board of Educ. of the Albuquerque Pub. Schs.*, 535 F.3d 1243 (10th Cir. 2008).

## DISCUSSION

### I.     INTENTIONAL TORT CLAIMS

Couture has alleged claims against the Defendants for four intentional torts: battery, assault, false imprisonment, and intentional infliction of emotional distress. Defendants contend that the Legislature has not waived sovereign immunity for intentional torts against them as state actors. The Court agrees.

Under the New Mexico Tort Claims Act, "[a] governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort *except as waived*" by the provisions of the Act." NMSA 1978, § 41-4-4(A) (emphasis added). The Tort Claims Act specifically waives governmental immunity for claims of liability "resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico *when caused by law enforcement officers*. . . ." *Id.*, § 41-4-12 (emphasis added). However, the statute is silent as to the commission of intentional torts by public employees other than law enforcement officers. It is undisputed that the Defendants in this case are educators, not police or other law enforcement officers.

As the Defendants point out, this Court has previously held that the New Mexico Tort Claims

Act does not waive immunity for intentional torts committed by public employees who are not members of law enforcement. *See, e.g., Tate v. Fish*, 347 F. Supp.2d 1049, 1058-59 (D.N.M. 2004) (Smith, M.J.). Plaintiff makes no substantive response to Defendants' argument, stating only that the intentional torts are pled in the alternative and therefore the Court should withhold ruling on Defendants' motion for summary judgment. However, because the law on this issue is clear, the Court can discern no reason to postpone its ruling. The Court holds that the New Mexico Tort Claims Act does not waive Defendants' immunity for Plaintiff's intentional tort claims. Therefore, Defendants' motion for summary judgment as to the intentional tort claims will be granted.

## II.     NEGLIGENCE CLAIM

Defendants contend that the Court should reconsider its denial of summary judgment on Plaintiff's negligence claims, citing three arguments. First, they argue that the matter has been decided by the Tenth Circuit, and therefore the doctrine of law of the case entitles them to summary judgment. Second, they assert that the New Mexico Court of Appeals' decision in *Lessen v. City of Albuquerque*, 2008-NMCA-085, 144 N.M. 314, issued after this Court's denial of APS's original motion for summary judgment, compels the conclusion that they are immune from Plaintiff's negligence claim. Finally, they contend that each use of the timeout room must be separately evaluated for possible negligence. The Court disagrees with Defendants on the first two issues, and agrees with Plaintiffs that the third issue is one best left to be addressed in jury instructions.

### A.     Effect of the Opinion of the Court of Appeals for the Tenth Circuit

Defendants argue that the Tenth Circuit's opinion in *Couture*, 535 F.3d 1243 (10th Cir. 2008), is the law of the case on the issue of Defendants' alleged negligence. "As most commonly defined, the [law of the case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona*

*v. California*, 460 U.S. 605, 618 (1983).  In finding that the Defendants were entitled to qualified immunity on Plaintiff's Fourth and Fourteenth Amendment claims, the Tenth Circuit resolved only issues of law, not of fact.  *Couture*, 535 F.3d at 1249.  Those legal issues were whether or not the seizures of M.C. were unreasonable under the Fourth Amendment or the Fourteenth Amendment due process clause.  The Tenth Circuit expressly declined to reach any of Plaintiff's claims other than those for unreasonable seizure and procedural due process.  *Id*. at 1249 n.3 and 1250.  The Court observed, "our function here is to evaluate whether the educators transgressed constitutional limits on their treatment of M.C."  *Id*. at 1251.  The Tenth Circuit ultimately concluded as a matter of law that the Defendants' actions were reasonable under the Fourth and Fourteenth Amendments, given the threat that M.C. often posed to himself and others and in light of the fact that the timeouts were expressly prescribed by his IEP as part of his education.

Here, the Defendants argue that the Tenth Circuit's decision on qualified immunity for Fourth and Fourteenth Amendment claims is the law of the case with respect to Plaintiff's negligence claims.  The Court disagrees.  The Tenth Circuit explicitly declined to address anything other than the Fourth Amendment and due process claims before it.  It did not analyze Plaintiff's claim for negligence which, as a rule "is not a basis of liability for constitutional torts."  *O'Neill v. Krzeminski*, 839 F.2d 9, 11 n. 1 (2d Cir. 1988).  *See also Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1126 (10th Cir. 2008) ("[N]egligent government conduct is insufficient to prove liability under § 1983."); *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (holding that due process is "not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property") (emphasis in original).  Constitutional torts require a higher threshold than mere negligence.  *See, e.g., Turner v. City of Taylor*, 412 F.3d 629, 649 (6th Cir. 2005).

Defendants argue, in effect that in ruling upon the constitutional torts, the Tenth Circuit has

5

decided that they were not negligent under state common law. They focus on the court's statement that Defendants' use of the timeout room was part of M.C.'s education, and they contend that an act that is "educational" cannot be a breach of a duty. *See* Doc. No. 169 at 6. Defendants overlook the fact that at the time it made those statements, the Tenth Circuit was viewing the case through the lens of the higher standard applicable to constitutional torts, as opposed to mere negligence. In so doing, it concluded that it was not *constitutionally* unreasonable for Defendants to employ the timeout room with M.C. in the manner they did. The Tenth Circuit's holding, however, does not address the lower standard applicable to negligence claims, nor does its decision address that claim as a matter of law. Thus, the doctrine of law of the case does not apply here.

### B. Waiver of Immunity Under *Lessen v. City of Albuquerque*, 2008-NMCA-085, 144 N.M. 314.

In its prior Memorandum Opinion and Order [Doc. No. 158], this Court concluded that under *Upton v. Clovis Mun. Sch. Dist.*, 2006-NMSC-040, 140 N.M. 205, Defendants do not have sovereign immunity to Plaintiff's negligence claims under NMSA 1978, § 41-4-6, which waives immunity for negligent operation of a public building. The Defendants now ask the Court to reconsider that ruling in light of the decision of the New Mexico Court of Appeals in *Lessen v. City of Albuquerque*, 2008-NMCA-085, 144 N.M. 314, which was issued after this Court's Memorandum Opinion and Order.

In *Lessen*, a mother sued the City of Albuquerque and Correctional Medical Services, Inc. for the conduct of their employees at the Metropolitan Detention Center ("MDC"), which she alleged resulted in the death of her son. The decedent was an inmate at MDC experiencing the effects of withdrawal from heroin when the metropolitan court ordered his release. He was initially released to be transported by van to downtown Albuquerque, but he exited the van, re-entered MDC, and was released to the MDC parking lot. The plaintiff's son apparently wandered off into the

6

nearby desert and died of hypothermia. She alleged that the City negligently operated and maintained MDC by failing to ensure that upon release, inmates had proper transportation, and by failing to ensure that they received proper medical care.

The *Lessen* court considered opinions by the New Mexico Supreme Court in *Upton*, in which a child died as a result of an asthma attack she experienced at school, and *Espinoza v. Town of Taos*, 120 N.M. 680, 905 P.2d 718 (1995), wherein a child was injured on a playground as a result of inadequate supervision.[1] In *Upton*, the child's substitute physical education teacher required her to participate in a strenuous class, even after the child asked to be excused, and even though the parents had previously alerted both the regular teacher and the school to her medical condition. 2006-NMSC-040 at ¶ 2. There was also evidence that the school had failed to respond appropriately after the child collapsed. *Id*. at ¶ 4-5. In finding that the parents had stated a claim for negligent operation of a public building, the court concluded that the Uptons had "challenge[d] the School District's general failure to implement promised safety policies for at-risk students." *Id*. at ¶ 18. However, the *Upton* opinion does not reveal either the presence or absence of evidence that any other students suffered actual harm as a result of the school's negligent operation. Rather, the court reasoned that the school's failure to appropriately respond to the student's emergency medical needs was a "potential" threat to other children because it "makes it *more likely* that all similarly situated students were at risk as well." *Id*. at ¶ 24 (emphasis added). In *Espinoza*, a child was injured when he fell from a slide on a playground at a city-run summer camp, and the parents alleged that the injury stemmed from insufficient and negligent supervision. 120 N.M. at 681-82. The New Mexico Supreme Court found that the New Mexico Tort Claims Act contained no waiver of immunity for

---

[1] This Court also considered those cases when it issued its previous Memorandum Opinion and Order.

negligent supervision claims. *Id.* at 683-84. It also observed that the statute does not waive immunity for a single, discrete administrative decision affecting only a single person, as opposed to a dangerous condition affecting the general public. *Id.* (citation omitted).

In *Lessen*, the Court of Appeals reviewed both *Upton* and *Espinoza* and stated that the plaintiff had failed to "identify the danger to which MDC employees' acts or omissions exposed released inmates." 2008-NMCA-085, ¶ 25. According to the *Lessen* court, MDC was not located so far from civilization that the absence of transportation posed a danger to the population of released inmates. *Id.* Instead, the court reasoned, "plaintiff's allegations . . . are specific to the City's treatment of Decedent. Plaintiff contends that MDC employees should have known that Decedent was coming out of detoxification and may have been disoriented and that they should have taken extra steps to protect him from his own inability to care for himself. In other words, Plaintiff alleges that MDC employees negligently supervised Decedent." *Id.* at ¶ 27. The *Lessen* court did not seem to consider, as the New Mexico Supreme Court in *Upton* had, that MDC's policies could potentially endanger similarly situated MDC inmates, e.g., those being released with medical conditions that could cause disorientation.

*Lessen* does not alter the Court's conclusions as set forth in its prior Memorandum Opinion and Order [Doc. No. 158]:

> Unlike the claims in *Espinoza* and *Archibeque*, Plaintiff's claim is based upon the failure to maintain the safe condition of the timeout room generally and not simply failure to supervise a single student. . . . Moreover, the evidence indicates that Defendants used the timeout room not simply for [M.C.], but for all children labeled as emotionally disturbed. Plaintiff has presented evidence that Defendants had two classrooms equipped with timeout rooms and that APS and its staff used these timeout rooms for emotionally disabled students generally and not simply for [M.C.]. This case, therefore, is unlike *Espinoza* or *Archibeque* in that the dangerous condition here (i.e., the negligent operation of the timeout room) was connected to the operation or maintenance of the building and was not simply an isolated administrative decision impacting one individual.

*Id.* at 12-13. In other words, this Court will follow the New Mexico Supreme Court's ruling in *Upton*, which requires it to consider whether the operation of the timeout room as demonstrated by Plaintiff has the potential to adversely affect students similarly situated to M.C. Viewed in the light most favorable to the Plaintiff, the evidence shows that Defendants used two timeout rooms for emotionally disturbed students in general, not merely for M.C. This is a reasonable inference, based on the presence of the two rooms and the number of emotionally disturbed students at the school. Thus, the operation of the timeout rooms by Defendants—which, as the Tenth Circuit pointed out, have no bathrooms or access to water—could endanger the "users of the building," e.g., students similarly situated to M.C. *Upton*, 2006-NMSC-040 at ¶ 23. It is true, as Defendants point out, that Plaintiff has not come forward with evidence regarding the behavior of specific students or APS's individualized treatment of those students. But under *Upton*, such evidence is not necessarily required. In that case, the plaintiffs did not come forward with evidence to show that other students had been harmed by the school's failure to adequately address special health needs. The mere possibility that a group of students, rather than one specific student, could be harmed by the manner in which the defendant operated the building was enough. Thus, this portion of the motion to reconsider will be denied.

   **C.**  **<u>Separate Consideration of Each Use of the Timeout Room</u>**

   Defendants argue that under New Mexico law, each use of the timeout room must be separately evaluated for judgment. Doc. No. 169 at 10, citing the Tenth Circuit's statement that a "blanket" determination of potential Section 1983 liability is not appropriate because "the plaintiff would still only be entitled to damages for those few problematic incidents." *Couture*, 535 F.3d at 1252 n.5. They contend that the same is true for claims of negligence under New Mexico law, particularly where, as here, M.C. was placed in the timeout room on 21 separate occasions and

9

different educators were present for separate incidents. Thus, argue Defendants, each event is distinct and must be evaluated independently. Plaintiff points out that this is not grounds for reconsideration, as it is a new argument, nor is it grounds for a motion for summary judgment at this time. She also contends that this argument is more properly a subject for jury instructions. Substantively, Plaintiff responds that Defendants' negligence is demonstrated by the entire course of conduct, and that Defendants (the individuals and Albuquerque Public Schools) are not successive tortfeasors but rather are all the same entity for purposes of the New Mexico Tort Claims Act, and therefore there is no need to distinguish among them at all on a special verdict form. Plaintiff does not distinguish the cases cited by the Defendants.

While the Court is inclined to agree with the Defendants that each use of the timeout room should be evaluated separately, the Court also agrees with Plaintiff that this argument is not one for reconsideration or for summary judgment, such that no ruling is required at this time. Rather, the matter is one to be addressed at trial when drafting jury instructions.

**IT IS THEREFORE ORDERED** that Defendants' *Motion for Reconsideration of the Court's Denial of Defendants' Motions for Summary Judgment As to Tort Claims* [Doc. No. 169] is **GRANTED IN PART** as to the intentional tort claims, and **DENIED IN PART** as to the negligence claims.

_____
**UNITED STATES DISTRICT JUDGE**